UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BETH A. STOKES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:12-cv-4054-SLD-JAG |
| ) | |
| JOHN DEERE SEEDING GROUP, a ) | |
| subsidiary of DEERE & COMPANY a/k/a ) | |
| JOHN DEERE COMPANY, and JIM ) | |
| GUNNISON, ) | |
| ) | |
| Defendants. | |

ORDER

Plaintiff Beth Stokes has worked for Defendant John Deere Seeding Group (hereafter "Deere") since 1973. Stokes alleges that over roughly the last four years she endured twelve incidents of intentional misconduct at the hands of Defendant Jim Gunnison, now retired. Stokes claims she reported Gunnison's misconduct to Deere supervisors to no avail. Deere's alleged failure to investigate or respond to any of Gunnison's misconduct gives rise to Stokes's causes of action against Deere.[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Stokes alleges claims premised on Title VII of the Civil Rights Act of 1964. The Court has supplemental jurisdiction over Stokes's state law claims pursuant to 28 U.S.C. § 1367.

Deere moved to dismiss five of Stokes's causes of action: (1) intentional infliction of emotional distress; (2) assault; (3) battery; (4) negligent retention and re-hiring; and (5) gender discrimination in violation of Title VII and the Illinois Human Rights Act ("IHRA"). (ECF No. 9.) Thereafter, Stokes filed a motion for leave to file an amended complaint that includes

---

[1] Stokes also sued Gunnison. Gunnison separately moved to dismiss various causes of action against him, which is addressed in a separate order.

1

additional allegations and a new cause of action—hostile work environment under Title VII and the IHRA. (ECF No. 27.) Deere revived its Motion to Dismiss pursuant to Local Rule 7.1(E). (ECF No. 29 at 1.) The Court allowed Stokes to amend her complaint and as such, this Order analyzes [#9] Deere's revived Motion to Dismiss as applied to [#33] Stokes's First Amended Complaint.

As set forth below, Stokes cannot hold Deere vicariously liable for Gunnison's alleged intentional torts. Further, the Court finds that Stokes's claim for negligent retention and rehiring is preempted by the Illinois Workers Compensation Act. Finally, the Court finds that Stokes has pled a plausible cause of action for gender discrimination.

## BACKGROUND

### I. The Twelve Alleged Instances of Misconduct

Stokes alleges the following twelve instances of misconduct:

The Slander Incident: Between September 1, 2008, and March 1, 2009, Gunnison gave false and negative reports to co-workers and supervisors about Stokes's work performance. (Amend. Compl. at ¶ 23, ECF No. 33.)

The Throwing Keys Incident: Around February 1, 2009, Gunnison threw a set of keys at Stokes, which struck her chest and caused her pain. (*Id.* at ¶ 24.)

The Spitting and Cursing Incident: Around March 13, 2009, in response to a work-related question, Gunnison screamed at Stokes in close proximity to her face, spit on her, and yelled "You are going to pay for this!" (*Id.* at ¶ 25.)

The Picture Incident: On April 6, 2009, after returning to work from a suspension (allegedly received for reporting Gunnison's harassment), Stokes found twenty-five pictures of Gunnison wallpapered over her workspace. (*Id.* at ¶ 26.)

<u>The Blocking Incidents</u>: On multiple occasions during November 2009, Gunnison blocked the exit door—which Stokes frequently needed to use to do her job.  (*Id.* at ¶ 28.)

<u>The Planter Incident</u>: On December 14, 2010, Gunnison violated Deere safety standards by purposely operating a planter while Stokes was inside the "arms" without telling Stokes or honking the horn.  (*Id.* at ¶ 29-30.)

<u>The Right Heel Incident</u>: On January 6, 2011, Gunnison rode over Stokes's heel with his bicycle, causing her great pain.  (*Id.* at ¶ 31.)

<u>The Desk Incident</u>: On February 15, 2011, Gunnison rifled through Stokes's personal items in her desk.  (*Id.* at ¶ 32.)

<u>The Name Calling Incident</u>: On February 15, 2011, Gunnison placed a box into Stokes's path as she was operating a planter.  Stokes backed into the box and Gunnison told fellow employees that Stokes was stupid.  (*Id.* at ¶ 33.)

<u>The Lockout Incident</u>: On February 28, 2011, Gunnison locked Stokes out of the building when it was cold and icy outside.  (*Id.* at ¶ 35.)

<u>The Near Miss Incident</u>: On March 15, 2011, Gunnison intentionally swerved a "tugger" he was driving at Stokes, nearly hitting her.  (*Id.* at ¶ 38.)

<u>The Bicycle Incident</u>: On April 8, 2011, Gunnison tried to hit Stokes while riding his bicycle, nearly missing her.  (*Id.*  at ¶ 47.)

II. **The Reports to Deere**

Stokes alleges that she repeatedly complained about Gunnison's alleged misconduct to Deere management.  Stokes alleges that she reported abusive behavior over 25 times.  (*Id.* at ¶ 10.)

## DISCUSSION

### I. Motion to Dismiss Standard

A motion to dismiss pursuant to Rule 12(b)(6) does not resolve the merits of a particular claim, but rather tests only the sufficiency of the allegations set forth in the complaint. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The factual allegations in a complaint are accepted as true, but must give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). In sum, the plaintiff's allegations must demonstrate that the claim "is plausible, rather than merely speculative." *Tomayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In ruling on a defendant's motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). In doing so, the facts set forth in the complaint are viewed "in the light most favorable to the nonmoving party." *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). Facts in the complaint that disprove the asserted claim should be considered, and the court need not accept unsupported conclusions of law. *Northern Ind. Gun & Outdoor Shows v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (quoting *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009)

(citing *Twombly*, 550 U.S. 544 (2007)) (conclusory allegations are "not entitled to be assumed true").

II.   Analysis

   A.   **Intentional Torts (Counts I, II, and III)**

Stokes alleges that Deere is liable for three intentional torts allegedly committed by Gunnison: intentional infliction of emotional distress ("IIED"), assault, and battery. Deere moves to dismiss each intentional tort, arguing that it cannot be held vicariously liable for Gunnison's intentional torts.[2]

It is well-established in Illinois that an employer is generally not vicariously liable for the intentional torts of its employees unless the employee committed the tort while acting within the scope of his employment. *See Pyne v. Witmer*, 129 Ill. 2d 351, 359 (1989). An employee's bad act cannot be within the scope of his employment unless the employee is, or thinks he is, furthering the interests of his employer. *Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1421-22 (7th Cir. 1986), *rev'd on other grounds*, ("[T]he doctrine of respondeat superior makes an employer liable only for those intentional wrongs of his employees that are committed in furtherance of the employment; the tortfeasing employee must think (however misguidedly) that he is doing the employer's business in committing the wrong.").[3] Here, Stokes alleges no facts that suggest Gunnison served Deere's business interests by allegedly assaulting her, battering her or inflicting her with emotional distress.

---

[2] Deere also argues that the IWCA preempts Stokes's intentional torts. The Court need not address this argument because it finds that Deere cannot be held vicariously liable.

[3] Stokes previously alleged that Gunnison's conduct was "motivated by his desire to retaliate against [Stokes]" but removed that allegation from her amended complaint after Deere pointed out that it further supports a finding that Gunnison was acting in his own interest. (*Compare* Complaint at ¶ 9, ECF No. 1, *with* Amend. Compl. at ¶ 9.) An employee departs from his scope of employment if the act was performed purely in the employee's own interest. *Wright v. City of Danville*, 174 Ill. 2d 391, 405 (1996).

Nor do any allegations plausibly support an inference that Gunnison thought his alleged assaults, batteries, and IIED were carried out in part to help Deere. To argue otherwise, Stokes relies solely on the Slander Incident,[4] suggesting that in addition to Gunnison's motivation to intentionally inflict her with emotional distress, he also "could have been" motivated in part by a desire to help Deere "prosper."[5] But the Slander Incident is only one of twelve incidents that form the basis of Stokes's IIED claim. Stokes does not argue that Gunnison acted within the scope of his employment with regards to her IIED claim as a whole. Considering the sea of allegations regarding Gunnison's misconduct that appears personally motivated and, if anything, detrimental to Deere's business interests, the Slander Incident taken on its own cannot carry her vicarious liability theory. *See Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 819-20 (7th Cir.1985) ("The usual view is that when the motive for the employee's intentional tort is personal … the employer is not [vicariously] liable."). Stokes's argument that Gunnison might have thought he was benefiting Deere by giving Deere false information does not plausibly support a conclusion that Gunnison acted within the scope of his employment when he intentionally inflicted her with emotional distress over the span of years.

Stokes also asserts that Deere is directly liable for Gunnison's intentional torts because management ignored her repeated complaints. *See Hunter*, 797 F.2d at 1422 ("[A]n employer is directly liable … for those torts committed against one employee by another … that the employer could have prevented by reasonable care in hiring, supervising, or if necessary firing

---

[4] The Slander Incident was when Gunnison allegedly made a series of false, negative reports about Stokes. (*See* Amend. Compl. at ¶ 23.)

[5] The Slander Incident is not alleged to be a battery, so it is not a hook to hold Deere vicariously liable for Gunnison's alleged battery. Although it is alleged to be an assault, Deere cannot be held vicariously liable because the Slander Incident is time-barred, having occurred over three years before Stokes filed suit. *See* 735 ILCS 5/13-202 (2-year statute of limitations). The Slander Incident is therefore only relevant to Stokes's IIED claim against Deere.

the tortfeasor.") (citing *Lancaster*, 773 F.2d at 817). But Stoke's only direct theory of liability is negligent retention and rehiring, which the Court will now address.

    **B.**    **Negligent Retention and Re-Hiring (Count IV)**

Deere argues that Stokes's negligent retention and re-hiring cause of action is preempted by the Illinois Workers Compensation Act ("IWCA"), 820 ILCS 305/1 *et seq.*, per its exclusive remedy provision.[6] The Illinois Supreme Court has explained that the purpose of the exclusive remedy provision is to protect the employer from civil liability in certain circumstances: "[it] is part of the *quid pro quo* in which the sacrifices and gains of the employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990) (quoting 2A Larson, Law of Workmen's Compensation § 65.11 (1988)). Employees can recover damages for accidental injuries under the IWCA without having to prove that their employer caused the injury. But because the employer is liable for workplace injuries regardless of fault, the employee cannot seek civil damages from her employer based on its negligence. If this were not the case, there would be no *quid pro quo*—the IWCA would add liability for which the employer previously had none (e.g., no-fault injuries) but would not cover any injuries for which the employer was already liable (e.g., injuries caused by employer negligence). This is not to say that the IWCA totally shields employers from civil liability for workplace injuries. An employee can seek to hold her employer civilly liable for an injury

---

[6] The IWCA exclusivity provision states in relevant part:

> No common law or statutory right to recover damages from the employer … for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act….

820 ILCS 305/5(a).

7

caused by her employer's intentional action (not an "accidental" injury).  *See Meerbrey*, 139 Ill. 2d at 462-63.  In sum, an employee must seek redress through the IWCA for no-fault workplace injuries and workplace injuries caused by the employer's negligence (both "accidental" injuries).

Other Courts have likewise held that claims asserting employer negligence are preempted by the IWCA.  *See, e.g., Collier v. Wagner Castings Co.*, 70 Ill. App. 3d 233, 238-39 (Ill. App. Ct. 1979) ("Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as … willfully failing to furnish a safe place to work … this still falls short of the kind of actual intention to injure that robs the injury of accidental character.") (quoting 2 Larson, Workmen's Compensation § 68.13 (1973)); *Simmons v. Chicago Public Library*, 860 F. Supp. 490, 494 (N.D. Ill. 1994) (finding a claim for negligent retention preempted by the IWCA); *Small v. Chicago Health Clubs, Inc.*, 843 F. Supp. 398, 403 (N.D. Ill 1994) ("The IWCA abrogated employer liability for common law negligence.").

Here, Stokes seeks to hold her employer liable for negligence—specifically, negligent retention and rehiring.  Her claim is barred by the exclusivity provision of the IWCA.  *See Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 957-58 (N.D. Ill. 2002).  Not only is the employer's negligence the cornerstone of negligent retention and rehiring—and therefore preempted for the reasons explained above—but any attempt by Stokes to recast this cause of action as one stemming from Deere's intentional misconduct must also fail.  Claiming that Deere intentionally facilitated Gunnison's tortious conduct by retaining and/or rehiring him is "entirely redundant" with her intentional tort causes of action.  *See id.* at 958 ("A claim for intentional misconduct arising from actions of the employer that facilitated the employee's tortious conduct would be entirely redundant.").  If Stokes seeks to hold Deere liable for its intentional acts, then negligent retention and rehiring is not the appropriate vehicle; if Stokes seeks to hold Deere

liable for its negligence, then the IWCA preempts the action. Accordingly, Stokes's negligent retention and re-hiring cause of action is dismissed with prejudice.

      **C.**      **Gender Discrimination (Count VI)**

To establish a prima facie case of gender discrimination under Title VII of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000e *et seq.*) and the IHRA (775 Ill. Comp. Stat. 5/1-101 *et seq.*) using the indirect method, Stokes must demonstrate that (1) she is a member of a protected class; (2) she was performing her job to her employer's legitimate expectations; (3) that in spite of her meeting the legitimate expectations of her employer, she suffered an adverse employment action; and (4) that she was treated less favorably than similarly situated male employees. *Zaderaka v. Ill. Human Rights Comm'n*, 545 NE 2d 684, 687 (Ill. 1989) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Here, Deere argues that Stokes has not plausibly alleged the third element: that she suffered an adverse employment action.

One way to show an adverse employment action is to allege a discrete act of discrimination (e.g., being fired). *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1026-27 (7th Cir. 2003). In the gender discrimination section of her First Amended Complaint, Stokes alleges a discrete adverse employment action—that she was suspended without pay for a period of 30 days as a result of the Spitting and Cursing Incident. (Amend. Compl. at ¶¶ 100-02.) But her suspension cannot serve as her discrete adverse employment action because it is untimely. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010) ("[T]he statute of limitations precludes recovery for discrete acts that occur outside the statutory time period.") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)). Under 42 U.S.C. § 2000e-5(e)(1), Stokes had, at most, 300 days from the alleged unlawful employment action to file her claim. Her alleged suspension occurred in late March 2009, (*id.* at ¶¶ 100-02), but she didn't file her claim until more than 300 days later on August 8, 2011, (*id.* at ¶ 6). *See*

9

*Hildebrandt*, 347 F.3d at 1026-27 (the continuing violation doctrine is unavailable to prove a discrete act of discrimination).

Having determined that her alleged suspension cannot serve as Stokes's adverse employment action, the Court will now consider whether Stokes has otherwise alleged a plausible adverse employment action. None of Stokes's allegations during the relevant time (300 days before she filed her claim) rise to the level of a discrete adverse employment action. *See Hildebrandt*, 347 F.3d at 1027 (discrete adverse employment actions include "termination, failure to promote, denial of transfer, or refusal to hire) (quoting *Morgan*, 536 U.S. at 114). Instead of pointing to a discrete adverse employment action, Stokes argues that the combination of Gunnison's repeated misconduct and her supervisors' disparate treatment toward her constitutes harassment: "mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially his conditions of employment as they would be perceived by a reasonable person in the position of the employee." *See Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002). Harassment falls within the third of three broad categories of adverse employment actions recognized by the Seventh Circuit: "a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment." *See id.* Here, Stokes's allegations seem to fit.

Stokes alleges at least twelve instances of mistreatment at the hand of a coworker, namely Gunnison. And she alleges mistreatment by Deere supervisors. (*See* Amend. Compl. at ¶¶ 106, 109, 112, 115, 119-21.) For example, Stokes alleges that she was berated by supervisors after Gunnison falsely accused her of proclaiming she was the only person allowed to drive a tractor. (*Id.* at ¶ 112.) She further alleges that Deere launched an extensive investigation into her supposed misconduct based solely on Gunnison's false accusation. (*Id.* at ¶¶ 116-21.) At this

stage, the Court must accept all of Stokes's allegations as true and draw all reasonable inferences in her favor. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). In doing so, it is plausible that her allegations rise to the level of an adverse employment action. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 787 (7th Cir. 2008) ("This court has taken a broad view with regard to what qualifies as an adverse employment action…."). In particular, whether a reasonable person would consider Stokes's allegations to be "sufficiently severe" to worsen her condition of employment is a question of fact that the Court declines to resolve at this stage of the litigation. *See McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir. 1992) (explaining questions of fact are generally inappropriate for resolution on the pleadings). Stokes is not required to include detailed factual allegations in her complaint. *Twombly*, 550 U.S. at 555. She has given "fair notice of what the… claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Her allegations of Gunnison's misconduct, coupled with allegations of Deere's hostility towards her complaints, are sufficient to state a plausible claim upon which relief could be granted. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

## CONCLUSION

Deere's Motion to Dismiss [#9] is GRANTED with respect to Counts I-IV and DENIED with respect to Count VI.  The Court finds that (1) Stokes cannot hold Deere vicariously liable for Gunnison's alleged intentional torts and therefore Counts I, II, and III are dismissed without prejudice, (2) Stokes's claim for negligent retention and rehiring is preempted by the Illinois Workers Compensation Act and therefore Count IV is dismissed with prejudice, and (3) Stokes has plausibly alleged an adverse employment action and therefore Count VI is allowed.

Entered this 28th day of March, 2013.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
