IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| BETH A. STOKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-cv-04054-SLD-JAG |
| | ) | |
| JOHN DEERE SEEDING GROUP, | ) | |
| a subsidiary of DEERE & COMPANY | ) | |
| a/k/a JOHN DEERE COMPANY; | ) | |
| and JIM GUNNISON, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

In Count II of her Second Amended Complaint, ECF No. 47, Plaintiff Beth A. Stokes ("Stokes") alleges intentional infliction of emotional distress ("IIED") by Defendant John Deere Seeding Group ("Deere"). Deere has moved to dismiss Count II for failure to state a claim and to strike Stokes's characterization in her Response to Deere's Motion to Dismiss Count II, ECF No. 51, of Deere employee Teri Graves as "managerial level." For the following reasons, Defendant Deere's Motion to Dismiss, ECF No. 48, is GRANTED, and its Motion to Strike Erroneous Assertion Contained in Plaintiff's Response, ECF No. 52, is DENIED.

## BACKGROUND

Stokes has worked for Deere since 1973. Starting in 2008, she endured 12 alleged incidents of intentional misconduct by a now retired co-worker, Defendant Jim Gunnison ("Gunnison"), which Deere failed to investigate or respond to despite Stokes's many complaints. Second Am. Compl. ¶¶ 1–4, ECF No. 47.

1

## I. The Twelve Alleged Instances of Misconduct

Stokes alleges the following twelve instances of misconduct:

The Slander Incident: Between September 1, 2008, and March 1, 2009, Gunnison gave false and negative reports to co-workers and supervisors about Stokes's work performance. *Id.* ¶ 19.

The Throwing Keys Incident: Around February 1, 2009, Gunnison threw a set of keys at Stokes, which struck her chest and caused her pain. *Id.* ¶ 20.

The Spitting and Cursing Incident: Around March 13, 2009, in response to a work-related question, Gunnison screamed at Stokes in close proximity to her face, spit on her, and yelled, "You are going to pay for this!" Stokes feared for her safety and pushed Gunnison away in self-defense. *Id.* ¶ 21.

The Picture Incident: On April 6, 2009, after returning to work from a suspension (allegedly received for pushing Gunnison away in self-defense), Stokes found twenty-five pictures of Gunnison wallpapered over her workspace. *Id.* ¶ 22.

The Blocking Incidents: On multiple occasions during November 2009, Gunnison blocked the exit door, which Stokes frequently needed to use to do her job. *Id.* ¶ 24.

The Planter Incident: On December 14, 2010, Gunnison violated Deere safety standards by purposely operating a planter while Stokes was inside the machine's "arms" without telling Stokes or honking the horn. *Id.* ¶¶ 25–26.

The Right Heel Incident: On January 6, 2011, Gunnison rode over Stokes's heel with his bicycle, causing her pain. *Id.* ¶ 27.

The Desk Incident: On February 15, 2011, Gunnison rifled through Stokes's personal items in her desk. *Id.* ¶ 28.

<u>The Name Calling Incident</u>: On February 15, 2011, Gunnison placed a box into Stokes's path as she was operating a planter. Stokes backed into the box and Gunnison told fellow employees that Stokes was "stupid." *Id.* ¶ 29.

<u>The Lockout Incident</u>: On February 28, 2011, Gunnison locked Stokes out of the building when it was cold and icy outside; Stokes had to walk through ice-covered terrain to find shelter. *Id.* ¶ 31.

<u>The Near Miss Incident</u>: On March 15, 2011, Gunnison intentionally swerved a "tugger" vehicle he was driving at Stokes, nearly hitting her. He admitted to a union steward that he came within six inches of Stokes. *Id.* ¶ 32.

<u>The Bicycle Incident</u>: On April 8, 2011, Gunnison tried to hit Stokes while riding his bicycle, and came within two inches of hitting her. *Id.* ¶ 33.

**II.    The Reports to Deere**

Stokes claims she reported Gunnison's conduct over 25 times to more than 14 different supervisors, coordinators, and union stewards, but Deere management "intentionally disregarded" these reports of Gunnison's dangerous activities. *Id.* ¶¶ 38–40. Stokes claims Deere never disciplined Gunnison for his misconduct towards her, but instead threatened to fire Stokes for repeatedly reporting Gunnison's harassment. *Id.* ¶¶ 49, 54. Stokes's allegations describe specific reports to Deere including:

On February 15, 2011, Teri Graves (EEOC Deere Chairperson Civil & Human Rights UAW Local 434) acknowledged Stokes's unanswered repeated reports of harassment. *Id.* ¶ 30.

3

On March 11, 2011, Stokes reported Gunnison's harassment to Scott Dudley (Supervisor of Supervisor Ryder), Supervisor Jeff Ryder—to whom Stokes made numerous complaints regarding Gunnison—and Union Steward Rolland L. Peterson. *Id.* ¶¶ 50–51.

On March 15, 2011, Stokes reported the Near Miss Incident to Ryder and Union Steward Brian Sullivan; Ryder did not report it up the chain. *Id.* ¶ 53.

Sometime before March 15, 2011, Stokes reported Gunnison's harassing behavior to Administrator Rich Finnessy, who told Stokes he would fire her if she came up "here" about "this" again. *Id.* ¶ 54.

On April 5, 2011, Stokes reported Gunnison's behavior to Safety Coordinator Larry Limo, who did not investigate further. *Id.* ¶ 55. Also on April 5, 2011, Stokes met with Quality Manager Marilyn Dumolien to report Gunnison's behavior. Instead of stopping Gunnison's conduct, Dumolien suggested Stokes work in a different area. *Id.* ¶ 56.

At an April 11, 2011 meeting with Finnessy, Ryder, Jason VanDerLindern, Dumolien, and Minor, Stokes brought up the Bicycle Incident and her general distress at Gunnison's pattern of conduct. Finnessy allegedly expressed his hope that Gunnison's retirement would "remedy the 'situation.'" *Id.* 57–58.

As a result of these incidents and Deere's failure to address them, Stokes maintains she suffered emotional distress, which was manifested by fear, severe depression, sleepless nights, and destruction of her self-confidence. *Id.* ¶¶ 34, 62.

Stokes brought this suit against Deere and Gunnison on June 14, 2012. The Court dismissed without prejudice, among other claims, Stokes's IIED count against Deere. Order of March 28, 2013, ECF No. 35. The Court held that Stokes had not sufficiently alleged that Deere was

4

vicariously liable for IIED caused by Gunnison. *Id.* at 5–6. The Court did not determine whether Stokes's allegations stated a claim of Deere's direct liability for IIED, noting that the Complaint's only direct liability theory was that of negligent retention and re-hiring. *Id.* On May 6, 2013, Stokes filed her Second Amended Complaint, in which Count II again alleged IIED by Deere. Second Am. Compl. ¶¶ 36–63. In the motion before the Court, Deere moves to dismiss Count II of the Second Amended Complaint. Def.'s Mot. Dismiss, ECF No. 48.

## DISCUSSION

### I. Legal Standard

The Federal Rules of Civil Procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Seventh Circuit has identified the practical requirements of *Twombly* and *Iqbal* for federal pleading:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## II. Analysis

Deere argues that Count II fails to state a claim because: (1) it merely restates the IIED liability argument—i.e., Deere is derivatively liable for its employee's alleged intentional misconduct—that the Court previously rejected; (2) Stokes's IIED claim is preempted by the Illinois Workers' Compensation Act, 820 ILCS 305/5(a); and (3) Stokes fails to plausibly allege that Deere engaged in "extreme and outrageous" conduct, an element of the tort. Def.'s Mem. Supp. Mot. Dismiss 2–3, ECF No. 49. Because the Court finds that Stokes has failed to sufficiently allege "extreme and outrageous" conduct, it does not reach Deere's first two theories.

The elements of an IIED claim under Illinois law are:

> First, the conduct involved must be truly extreme and outrageous. Second, the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a probability that this conduct will cause severe emotional distress. Third, the conduct must in fact cause *severe* emotional distress.

*Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency;" it must be "so severe that no reasonable man could be expected to endure it." *Id.* at 702–03 (citations and internal quotation marks omitted).

"Extreme and outrageous" conduct is judged by an objective standard, *id.* at 703 (citation omitted), based on all the facts and circumstances present in the case, *McGrath*, 533 N.E.2d at 811. Factors to be considered are: the intensity and duration of the plaintiff's distress, the degree of control the defendant exerts over the plaintiff, whether the defendant reasonably believed his objective was legitimate, and the defendant's awareness of any mental or physical condition

rendering the plaintiff peculiarly susceptible to emotional distress. *Id.* at 809–11. Courts should weed out insufficient IIED claims at the pleadings stage because "indiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts." *Miller v. Equitable Life Assurance Soc'y*, 537 N.E.2d 887, 889 (Ill. App. Ct. 1989) (quoting *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961)).

In the employment context, because personality conflicts and stressful performance evaluations are "unavoidable aspects of employment," Illinois courts limit recovery for IIED to cases in which the employer's conduct is "truly egregious." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567–68 (7th Cir. 1997) (citing *Heying v. Simonaitis*, 466 N.E.2d 1137, 1144 (Ill. App. Ct. 1984)) (internal quotation marks omitted). Attempts to coerce an employee into illegal or sexual activity rise to this level. *See id.* (citing *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251–52 (Ill. App. Ct. 1990) and *Milton v. Illinois Bell Tel. Co.*, 427 N.E.2d 829, 833 (Ill. App. Ct. 1981)). "'[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' do not amount to extreme and outrageous conduct, nor does conduct 'characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Id.* at 567 (quoting *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)).

*Miller* rejected a claim of IIED liability for conduct comparable to that alleged by Stokes. *See* 537 N.E.2d at 889. In *Miller*, the plaintiff alleged that her supervisors ridiculed her job performance, ignored her requests for training, denied her request for transfer, refused to cooperate in recovering property stolen from her, forbade her from calling police when another employee attacked her, encouraged colleagues' sexual harassment of her, suggested she use sex to make sales, and fired her when she reported other employees' fraudulent practices; she also

7

claimed her co-workers ignored, insulted, and threatened her. *Id.* at 888; *see also Poulos v. Village of Lindenhurst*, No. 00 C 5603, 2002 WL 31001876, at * 17 (N.D. Ill. Sept. 3, 2002) (holding that supervisors' conduct—tampering with plaintiff's belongings, throwing firecrackers at her, insulting her, and engaging in a physical altercation with her—was not sufficiently "outrageous" to state an IIED claim). The intimidating and occasionally painful conduct that Stokes alleges Deere permitted is of a kind with *Miller* and *Poulos* and not more severe.

Stokes attempts to distinguish cases like *Miller* by characterizing their allegations as primarily concerning employment practices, while hers feature demeaning and threatening conduct that placed Stokes's health and safety at risk. Pl.'s Resp. Mot. Dismiss 11, ECF No. 51. But cases dismissed for insufficient IIED allegations have contained claims of insults and threats, and featured similar allegations that management refused to take action while the plaintiff was assaulted or battered. *See, e.g.*, *Polous,* 2002 WL 31001876, at *2–*3 (noting allegation that supervisors "tossed lit firecrackers" at plaintiff and bumped her squad car with a truck); *Miller*, 537 N.E.2d at 888 (noting allegations that employer made "disparaging remarks and insults" and prevented plaintiff from getting police assistance when a secretary hit and threw coffee at her, and that co-workers threatened physical harm and touched her breast).

Stokes maintains that the high volume of incidents and complaints ignored by Deere rises to the level of "extreme and outrageous" conduct. Pl.'s Resp. Mot. Dismiss 11; *see Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003) ("A pattern, course, and accumulation of acts can make an individual's conduct 'sufficiently extreme to be actionable, whereas one instance of such behavior might not be.'" (quoting *Pavlik v. Kornhaber*, 761 N.E.2d 175, 187 (Ill. App. Ct. 2001))). However, this doctrine contemplates a pattern of far greater severity or duration than

8

Stokes alleges. For example, in *Feltmeier*, the plaintiff alleged that her husband repeatedly battered her, threw items at her, and prevented her from leaving the house to escape this treatment—in addition to verbally abusing and stalking her—over more than 11 years. 798 N.E.2d at 79. The *Pavlik* plaintiff alleged that her employer forced her to stay late in the office or meet him after work hours for meetings that "involved unwanted sexually explicit discussions and unwelcome and offensive touching or gestures." 761 N.E.2d at 180. Stokes's allegations span less than three years and describe conduct—Deere's failure to intervene and discipline Gunnison—that is categorically less severe than the repeated physical attacks, restraints on freedom, and unwanted sexual behavior by the defendants in *Feltmeier* and *Pavlik*.

The closest thing to a dividing line in the imprecise and fact-intensive "extreme and outrageous" inquiry is whether the employer attempts to coerce the plaintiff into illegal or sexual activity. *See Van Stan,* 125 F.3d at 569 (rejecting IIED claim because conduct alleged was not akin to *Pavilon* (sexual demands) or *Milton* (coercion into illegal activity)); *Jobe v. Rager*, No. 03-1401, 2006 WL 51180, at *7 (C.D. Ill. Jan. 10, 2006) (collecting cases rejecting IIED claims due to lack of employer coercion into illegal activity or sexual conduct). Stokes makes no claim that Deere or Gunnison attempted to coerce her into illegal behavior or sexual activity. Therefore, while deplorable, the conduct Stokes alleges does not satisfy the high standard for "extreme and outrageous" conduct in the workplace necessary to state an IIED claim under Illinois law.

### III. Motion to Strike

Deere also moves to strike Stokes's characterization in her Response to Deere's Motion to Dismiss Count II of Deere employee Teri Graves as "managerial level." Def.'s Mot. Strike,

9

ECF No. 52 (citing Pl.'s Resp. Mot. Dismiss 9). Because a motion to strike applies only to pleadings, and not motions such as Stokes's Response, Deere's motion to strike is denied. *See* Fed. R. Civ. P. 7(a) (defining pleadings); Fed. R. Civ. P. 12(f) ("The court may strike from a *pleading* ....") (emphasis added); *see, e.g.*, *Hall v. United of Omaha Life Ins. Co.*, No. 10-cv-0012, 2011 WL 1256836, at *1 (S.D. Ill. Apr. 4, 2011) (denying motion to strike a non-pleading).

## CONCLUSION

Defendant Deere's Motion to Dismiss for Failure to State a Claim Count II of the Second Amended Complaint, ECF No. 48, is GRANTED, and its Motion to Strike Erroneous Assertion Contained in Plaintiff's Response, ECF No. 52, is DENIED. Count II of the Second Amended Complaint is dismissed without prejudice.

Entered this 5th day of March, 2014.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE